UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Plaintiff,

v.

BRAD M. GOLDSTEIN,
ROBERT J. BROWN,
DAVID K. GOROWAY,
GARY M. WEISS,
COMPREHENSIVE MEDICAL GROUP, INC.,
NEUROLOGICAL CONSULTANTS, LLC,
NEUROLOGY MEDICAL ASSOCIATES OF NEW JERSEY, LLC d/b/a NEURO/MED ASSOCIATES, LLC,
OPTIMAL MEDICAL GROUP, LLC,
PRACTICE MECHANIX, INC.,
PREMIER MEDICAL GROUP, INC.,
PRISM MEDICAL DIAGNOSTICS, LLC,
PROVIDERS MEDICAL GROUP, LLC, and
SPECTRUM DX SERVICES, INC.,

Defendants.

No. 03C 3936

PLAINTIFF DEMANDS TRIAL BY JURY

DOCKETED
JUN 1 1 2003

JUDGE SHADUR

FILED
JUN 1 0 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAGISTRATE JUDGE MASON

**COMPLAINT**

State Farm Mutual Automobile Insurance Company ("State Farm") alleges as follows:

## I. NATURE OF THE ACTION

1. This action seeks to recover millions of dollars that the defendants have stolen from State Farm by submitting and causing to be submitted thousands of fraudulent charges for worthless and unnecessary electrodiagnostic and spinal ultrasound studies that were purportedly rendered to victims of automobile accidents on a nationwide scale. In addition, State Farm seeks a declaratory

1

judgment that the defendants have no right to receive payment for any pending or future bills for such studies.

2. As discussed below, the defendants at all times relevant have known that: (a) the studies reflected on these bills are of no diagnostic value for the purposes for which they are purportedly rendered, and they are not medically necessary; (b) the purported findings from these studies are dangerously misleading to the patients who are subjected to them; (c) the procedure codes and charges reflected on their bills materially misrepresent both the nature and number of the studies that are purportedly performed; and (d) the number of studies purportedly performed are designed to maximize the profit potential presented by each patient.

3. The defendants' scheme began as early as 1993, has continued uninterrupted since that time, is ongoing as of the date of this Complaint, and has involved over 600 fraudulent claims to State Farm which are summarized in the chart attached hereto as Appendix A.

## II. JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Pursuant to 28 U.S.C. § 1331, this Court also has jurisdiction over the claims brought under 18 U.S.C. § 1961 *et seq.* ("RICO") because they arise under the laws of the United States. This Court also has jurisdiction over the state law claim because it is so related to the RICO claims as to form part of the same case and controversy.

5. Venue is proper pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Venue is also proper pursuant to 18 U.S.C. § 1965(a) and (b) because defendants transact affairs in this district and the ends of justice require it.

## III. ALLEGATIONS COMMON TO ALL COUNTS

### A. The Four Studies Upon Which The Scheme Is Premised

6. The defendants' scheme is premised on performing four purported diagnostic studies on patients who have been in automobile accidents, and causing thousands of dollars to be charged to State Farm and other insurers for the performance ("the Technical Component") and interpretation ("the Professional Component") of the studies on each patient.

7. The four studies consist of: (a) spinal ultrasounds; (b) somatosensory evoked potentials ("SSEPs"); (c) dermatomal evoked potentials ("DEPs"); and (d) nerve conduction velocity studies ("NCVs") (these four studies are collectively referenced hereafter as "the Four Studies"). According to documents prepared by the defendants and submitted to State Farm with each bill, the Four Studies are performed to confirm or exclude the existence of nerve root radiculopathies (i.e., pinched nerve roots arising from the spinal cord) and to isolate the nature and location of neurologic dysfunction and/or inflammation. In fact, the defendants know that the Four Studies, alone or in combination, cannot accomplish either purpose. The only purpose for which the defendants cause the Four Studies to be performed is to financially enrich themselves.

8. Spinal ultrasounds involve the use of ultrasound technology to obtain images of various spinal and paraspinal regions, including the cervical, thoracic and lumbar regions of the spine, the sacroiliac joint and trapezius muscles. The defendants cause spinal ultrasounds to be performed on virtually every patient for whom a bill is submitted to State Farm. Furthermore, to maximize profitability, the defendants consistently cause the spinal ultrasounds to be performed on multiple regions of the spine and submit separate charges for the studies performed on each such region.

9. The American College of Radiology, the American Institute of Ultrasound In Medicine, the American Academy of Neurology, and the American Chiropractic College of Radiology have issued position statements concluding that there is no evidence spinal ultrasounds have any diagnostic value in confirming or excluding the existence of nerve root radiculopathies or in isolating the nature and location of neurologic dysfunction and/or inflammation. In sum, these professional associations have concluded that spinal ultrasounds have no utility for the purposes for which the defendants purport to use them. See the position statements attached hereto as Appendix B. Consistent with the conclusion that spinal ultrasounds have no diagnostic value, the American Medical Association's Physicians' Current Procedural Terminology handbook, which establishes more than 8000 procedure codes ("CPT Codes") for physicians to use in describing their services for billing purposes, does not recognize a CPT code for spinal ultrasounds.

10. SSEPs, DEPs and NCVs are non-invasive electrodiagnostic studies in which various peripheral nerves in the arms or legs are stimulated with electrical currents. The velocity, amplitude and the shape of the response is then recorded by electrodes attached to the surface of the skin or scalp. The defendants caused NCVs and either SSEPs or DEPs to be performed on the vast majority of patients for whom a bill was submitted to State Farm. Furthermore, to maximize profitability, the defendants consistently caused the NCVs and either SSEPs or DEPs to be performed on each of the three peripheral nerves in both arms and/or each of the three peripheral nerves in both legs. To further maximize profitability, the defendants also routinely caused two additional forms of NCVs to be performed–H-Reflex studies and F-Wave studies–each of which increased the charges submitted to State Farm.

11. It is well established in medical science that SSEPs, DEPs and NCVs, alone or in combination, cannot confirm or exclude the existence of nerve root radiculopathies or isolate the nature and location of neurologic dysfunction.

**B. The One Critical Electrodiagnostic Study That Defendants Do Not Perform**

12. With limited exceptions that are not applicable here, the one electrodiagnostic study that is necessary to confirm or exclude the existence of nerve root radiculopathies and to isolate the nature and location of neurologic dysfunction is a needle electromyography study ("EMG"). Unlike the NCVs, DEPs and SSEPs which are non-invasive and can be performed by technicians, the EMG involves the insertion of a needle into various muscles to measure electrical activity in each such muscle and must be performed in most states by a medical doctor.

13. In virtually no instance did the defendants perform, cause to be performed or even recommend an EMG.

**C. The Defendants And Their Roles**

14. Defendant Brad Goldstein has created several entities through which he provides technicians and mobile equipment to perform the Four Studies in chiropractors' offices across the country (Goldstein and these entities are described in more detail in paragraphs 35-42 below, and are hereafter referenced as "the Goldstein Group").

15. David Goroway, acting through Practice Mechanix, Inc., aggressively recruits chiropractors into contractual arrangements with the Goldstein Group. (Goroway and Practice Mechanix, Inc. are described in more detail in paragraphs 43-44 below, and are hereafter referenced as "the Goroway Group").

16. Gary Weiss (described in more detail in paragraph 45 below, and hereafter referenced as "Dr. Weiss") is a medical doctor who purports to interpret the results of the Four Studies and sets

forth his findings in reports which are submitted to State Farm and other insurers to support the charges for the Four Studies.

17. Robert Brown, acting through Spectrum DX Services, Inc., contracts with the Goldstein Group to supply the above-described reports from Dr. Weiss and other medical doctors (Brown and the related entity are described in more detail in paragraphs 46-47 below, and are hereafter referenced as "the Brown Group") .

### D. How The Goldstein Group And The Goroway Group Recruit Chiropractors Into The Scheme

18. The Goldstein Group arranges for the Goroway Group to aggressively recruit chiropractors into the scheme through seminars and other solicitations which emphasize the enormous financial incentives that they have created to induce the chiropractors to order the Four Studies for their patients. The Goroway Group's promotional materials boast that doctors "have doubled, tripled and quadrupled the amount of money they collect . . . implementing our strategies," and that its mission is to "help doctors reach financial freedom."

19. The financial incentives are created through so-called "lease" agreements between the Goldstein Group and the chiropractors. These "lease" agreements are a sham. They are, in fact, nothing more than thinly disguised kickback arrangements that are unlawful under many states' laws and would violate various federal healthcare statutes if they resulted in charges being submitted to state or federally funded healthcare programs. One primary purpose of these state and federal anti-kickback laws is to ensure that doctors act in the best interests of their patients, free from economic and other improper inducements that invariably lead to the rendition of unnecessary healthcare services such as those involved here.

20. The "lease" agreements created by the Goldstein Group and promoted by the Goroway Group provide, in pertinent part, for:

(a) the Goldstein Group to arrange for technicians that it employs or engages to travel to chiropractors' offices with mobile equipment and perform the Four Studies on the chiropractors' patients;

(b) the chiropractors to pay the Goldstein Group typically no more than $200 per month to "lease" the technicians and the mobile equipment necessary to perform the Four Studies;

(c) the chiropractors to submit charges to State Farm and other insurers for the Technical Component (i.e., performance) of the Four Studies for each patient;

(d) the Goldstein Group to: (i) arrange for Dr. Weiss or other medical doctors to interpret the results from the Four Studies and to prepare reports purporting to reflect their findings; and (ii) submit charges to State Farm and other insurers for the Professional Component (i.e., interpretation) of the studies for each patient; and

(e) because the Goldstein Group understands that these "lease" agreements would violate various federal healthcare statutes if they resulted in claims made to any state or federally funded healthcare programs, the "leases" typically include an explicit provision in which the Goldstein Group and chiropractors agree that the Four Studies will not be ordered or performed on any patient whose care is reimbursed, in whole or part, by any such program. A representative lease agreement is attached hereto as Appendix C.

21. Through these "lease" agreements, the chiropractors can generate enormous profits. For example, a chiropractor who orders any combination of the Four Studies for only five patients every month would typically bill $800 to $1,500 per patient for the Technical Component. The chiropractor would therefore stand to collect from $4,000 to $7,500 per month for these services. This amounts to at least 20 times the chiropractor's "lease" cost to have the technician visit his office and perform the Four Studies each month, and it often is at least 10 times the amount that chiropractors typically charge during an office visit for providing other services that are within the lawful scope of their license.

22. Furthermore, the chiropractors are able to take advantage of these enormous financial incentives without having to do anything other than order the Four Studies for their patients using boiler-plate Reports of Medical Necessity supplied by the Goldstein Group. A representative Report

of Medical Necessity is attached hereto as Appendix D. The Reports of Medical Necessity provide a laundry list of diagnoses purportedly applicable to the upper extremities (arms) and the lower extremities (legs), and are designed to encourage the chiropractors to order the maximum number of studies to be performed. For example, if the chiropractors check any diagnosis among those listed on the Reports of Medical Necessity for the upper extremities, their patients will receive a full battery of NCVs and either SSEPs or DEPs on each of the three peripheral nerves in both arms. Conversely, if the chiropractors check any diagnosis among those listed for the lower extremities, their patients will receive a full battery of NCVs and either SSEPs or DEPs on each of the three peripheral nerves in the both legs. The Reports of Medical Necessity do not give the chiropractors the option to order NCVs, SSEPs or DEPs on less than all the peripheral nerves or on only one limb (e.g., the right arm or leg, but not the left arm or leg).

23. Furthermore, although the "lease" agreements provide that the chiropractors are required to supervise the technicians in performing the Four Studies on their patients, the chiropractors virtually never, if at all, supervise or even participate in any way in the performance of the Four Studies. They simply make rich profits by ordering the Four Studies and billing State Farm and other insurers for the Technical Component.

### E. Why The Goldstein Group And Goroway Group Create Financial Incentives For The Chiropractors To Order The Four Studies And Subject Their Patients To Them

24. The Goldstein Group pays a very modest fee for Dr. Weiss or other medical doctors to perform the Professional Component of the Four Studies for each patient--interpret the results and prepare reports with their purported findings. On information and belief, this fee is never more than $125 per patient.

25. The Goldstein Group then submits reports with the purported findings of Dr. Weiss or other medical doctors to State Farm and other insurers along with bills typically seeking to collect $3,000 or more for the Professional Component of the Four Studies for each patient--which is more than 25 times the Goldstein Groups' cost to have the Professional Component performed by Dr. Weiss or other medical doctors.

**F. The Financial Incentive For The Brown Group And Dr. Weiss**

26. The Brown Group, Dr. Weiss and other medical doctors split the fees that the Goldstein Group pays to have Dr. Weiss and other medical doctors provide a report with their purported findings from the Four Studies for each patient.

27. Although the Brown Group, Dr. Weiss and other medical doctors are paid no more than $125 for the reports with their purported findings for each patient, they provide the same service to other groups like the Goldstein Group and operate on a high volume. They thereby generate substantial income in return for creating a high volume of boiler-plate reports which are of no diagnostic value and, if anything, are dangerously misleading to patients. Furthermore, by providing such reports to the Goldstein Group for about 1/25th of the amount that the Goldstein Group charges State Farm and other insurers for those services, the Brown Group, Dr. Weiss and other medical doctors encourage the Goldstein Group to continue to refer to them the opportunity to provide these professional services. If the Brown Group, Dr. Weiss and other medical doctors did not provide that economic inducement, they would not have an opportunity to provide these services because neither the Brown Group, Dr. Weiss nor the other medical doctors have any direct referral relationships with the chiropractors who are ordering the studies.

G. **The Material Misrepresentations In The Bills And Reports Submitted To State Farm**

28. Every bill and report submitted by the chiropractors for the Technical Component of the Four Studies and by the Goldstein Group for the Professional Component of those studies materially misrepresents the necessity of the studies, as well as the nature and number of the studies performed in the following respects:

(a) as described above, the Four Studies cannot accomplish any of the diagnostic purposes for which the defendants purportedly caused them to be performed, were of no diagnostic value, and were not medically necessary;

(b) every bill for both the Technical Component and Professional Component of the spinal ultrasounds uses one or more of the following CPT Codes: (i) CPT Code 76800, which represents an ultrasound of the contents of the spinal canal; (ii) CPT Code 76880, which represents an ultrasound of the arms and/or legs; (iii) CPT Code 76536, which represents an ultrasound of the thyroid, parathyroid or parotid; and (iv) CPT Code 76856, which represents an ultrasound of the pelvis. Even if the spinal ultrasounds had some diagnostic value, each of these CPT Codes materially misrepresents the nature of the service performed because none of the spinal ultrasounds at issue were of the contents of the spinal canal, the arms, the legs, the thyroid, parathyroid, parotid or pelvis;

(c) many bills for both the Technical Component and Professional Component of the SSEPs and DEPs use CPT Code 95927, which represents a SSEP of the trunk (i.e. abdomen) or head. This CPT Code materially misrepresents the nature of the service performed because no SSEPs or DEPS of the trunk or head were performed;

(d) many bills for both the Technical Component and Professional Component of the SSEPs and DEPs materially misrepresent the number of the services performed. Specifically, many bills for both the Technical Component and Professional Component of the SSEPs and DEPS include a charge for either 6 or 12 separate SSEPs or DEPs for each patient. Even if the SSEPs or DEPs had some diagnostic value, the charge should have been for either 1 SSEP or DEP if either study was done on the upper extremities (arms) or lower extremities (legs) of a patient, or 2 SSEPs or DEPs if either study was done on both the upper and lower extremities of a patient; and

(e) every bill for the Professional Component of the NCVs uses CPT Codes 95903 and 95904, which represent, in part, that the amplitude (i.e., size) of the waves was evaluated–a necessary component of any valid and reliable

NCV interpretation–when in fact there is no indication in the defendants' records that it was.

A representative bill is attached hereto as Appendix E. Furthermore, Appendix A sets forth the above-described false statements from each bill submitted to State Farm regarding each patient on whom the Four Studies were performed.

**H. <u>The Dangerously Misleading Findings In Dr. Weiss' Reports</u>**

29. Dr. Weiss' purported findings, which are submitted by the Goldstein Group to State Farm and other insurers, are dangerously misleading to the patients on whom the Four Studies are performed in that they suggest the existence or non-existence of nerve root radiculopathies based on studies that cannot reliably or effectively provide any such information.

30. In every instance where Dr. Weiss concludes that NCV, SSEP and/or DEP results are abnormal, his finding is that this result is "consistent with" a nerve root radiculopathy. This is highly misleading in that NCVs, SSEPs and DEPs, alone or in combination, cannot confirm or exclude a nerve root radiculopathy. Moreover, in the vast majority of cases, abnormal NCVs, SSEPs and DEPs are attributable to causes other than nerve root radiculopathies. Therefore, patients are led to believe that their abnormal NCV, SSEP and/or DEP results suggest that they have nerve root radiculopathies, when in fact it is most likely that they do not.

31. In every instance where Dr. Weiss concludes that NCV, SSEP or DEP results are normal, on the other hand, his findings implicitly suggest that this is inconsistent with a nerve root radiculopathy. This is highly misleading in that the vast majority of patients who have nerve root radiculopathies have normal NCVs, SSEPs and DEPs. Therefore, patients who may have nerve root radiculopathies are led to believe that their normal NCV, SSEP or DEP results indicate that they have no such condition.

32. Other serious flaws in Dr. Weiss' methodology further undermine his findings. First, Dr. Weiss never sees or speaks to the patients, and is not present for or in any way involved in the performance of the Four Studies. Second, Dr. Weiss makes his findings regarding the NCV results without ever considering one of three key critical and necessary responses from the study–the amplitude (i.e. size) of the wave form as the electrical current runs through the nerve. Third, Dr. Weiss is never informed of the patients' body temperatures which can affect responses obtained in the NCV, SSEP and DEP studies and must be known to reliably evaluate the results.

### I. Consequences Of The Defendants' Scheme

33. As a result of the defendants' scheme, patients are subjected to worthless and unnecessary studies from which they receive dangerously misleading results. In addition, their limited insurance benefits are depleted for the sole purpose of financially enriching the defendants.

## III. THE PARTIES

### A. Plaintiff

34. State Farm is a corporation incorporated under the laws of the State of Illinois, with its principal place of business in Bloomington, Illinois. State Farm is licensed and engages in the business of insurance in virtually every State.

### B. Defendants

#### 1. The Goldstein Group

35. Brad Goldstein ("Goldstein") resides at 18380 Long Lake Drive, Suite 20-203, Boca Raton, Florida 33496, and has never been licensed to engage in any professional health service. Goldstein owns and controls defendants Comprehensive Medical Group Inc., Neurological Consultants, LLC, Neurology Medical Associates of New Jersey, LLC, Optimal Medical Group, LLC, Premier Medical Group, Inc., Prism Diagnostics Group, LLC and Providers Medical Group,

LLC. Goldstein formed these entities for the purpose of enabling him to regularly change the name under which he submits bills for the Professional Component of the Four Studies to State Farm and other insurers. Those bills direct State Farm and other insurers to send payments to various drop boxes around the country, the location of which depends on the entity name under which Goldstein chooses to send the bill.

36. Comprehensive Medical Group, Inc. ("Comprehensive") is incorporated under the laws of Florida, with a billing address of 7200 W. Camino Real, Suite 300, Boca Raton, Florida 33433. Goldstein bills State Farm for services purportedly performed in Illinois and elsewhere under the Comprehensive name.

37. Neurological Consultants, LLC ("Neurological Consultants") is a limited liability company organized under the laws of Kentucky, with a billing address of 1355 Bardstown Road, # 30, Louisville, Kentucky 40204. Although Goldstein does not bill State Farm for services in Illinois under the Neurological Consultants name, he does bill State Farm for the same services purportedly performed elsewhere under that name and those services are part of the racketeering scheme alleged herein which is occurring, in part, in Illinois.

38. Neurology Medical Associates of New Jersey, LLC ("Neurology Medical") is a limited liability company organized under the laws of New Jersey, with a billing address of 96 Linwood Plaza, Suite 515, Fort Lee, New Jersey 07024. Although Goldstein does not bill State Farm for services in Illinois under the Neurology Medical name, he does bill State Farm for the same services purportedly performed elsewhere under that name and those services are part of the racketeering scheme alleged herein which is occurring, in part, in Illinois.

39. Optimal Medical Group, LLC ("Optimal") is a limited liability company organized under the laws of Arizona, with a billing address of 3145 E. Chandler, # 110-101, Phoenix, Arizona

85048. Although Goldstein does not bill State Farm for services in Illinois under the Optimal name, he does bill State Farm for the same services purportedly performed elsewhere under that name and those services are part of the racketeering scheme alleged herein which is occurring, in part, in Illinois.

40. Premier Medical Group, Inc. ("Premier") is incorporated under the laws of the State of Florida, with a billing address of 7200 W. Camino Real, Suite 300, Boca Raton, Florida 33433. Premier was formerly known as B & G Diagnostic Systems, Inc. Goldstein bills State Farm for services purportedly performed in Illinois and elsewhere under the Premier name.

41. Prism Diagnostics, LLC ("Prism") is a limited liability corporation incorporated under the laws of Georgia, with a billing address of 1266 W. Paces Ferry Road, # 585, Atlanta, Georgia 30327. Although Goldstein does not bill State Farm for services in Illinois under the Prism name, he does bill State Farm for the same services purportedly performed elsewhere under that name and those services are part of the racketeering scheme alleged herein which is occurring, in part, in Illinois.

42. Providers Medical Group, LLC ("Providers") is a limited liability company organized under the laws of Colorado, with a billing address of 7450 W. 52nd Ave., M-220, Arvada, Colorado 80202. Goldstein bills State Farm for services purportedly performed in Illinois and elsewhere under the Providers name.

### 2. <u>The Goroway Group</u>

43. David Goroway ("Goroway") resides at 5601 S.W. 195 Terrace, Ft. Lauderdale, Florida 33332. Goroway owns and controls Practice Mechanix, Inc., through which he conducts seminars across the country and aggressively recruits chiropractors in Illinois and elsewhere to enter into the above-described arrangements with the Goldstein Group.

44. Practice Mechanix, Inc. ("Practice Mechanix") is a corporation incorporated under the laws of Florida, with its principal place of business at 1455 N. Park Drive, Weston, Florida 33326. Practice Mechanix transacts its affairs in Illinois and elsewhere. In the Practice Mechanix marketing material attached hereto as Appendix F, Practice Mechanix claims that defendant Premier (see paragraph 40 above) is "an affiliate of Practice Mechanix." The marketing material also touts Premier as "a nationwide electrodiagnostic testing company with the highest professional standards" and states that Premier is "the preferred provider of testing services for Practice Mechanix."

**3. Gary Weiss**

45. Gary Weiss resides at 1920 Appleby Lane, Malabar, Florida, and is licensed to practice medicine in Arizona, Colorado, Connecticut, Florida, Illinois and New Jersey. Dr. Weiss is employed by defendant Premier as its Medical Director. He is also employed by defendant Spectrum DX which is described below. The patients whose results Dr. Weiss purports to interpret and for whom he creates reports are in Illinois and elsewhere, including many States in which Dr. Weiss is not licensed or authorized to practice medicine.

**4. The Brown Group**

46. Robert Brown ("Brown") resides at 3705 Eagle Way, Melbourne, Florida 32934, and has never been licensed to provide professional health services in any jurisdiction. Brown was formerly the office administrator for Dr. Weiss's private medical practice. Brown owns and controls defendant Spectrum DX Services, Inc. ("Spectrum") through which he has arrangements to provide to the Goldstein Group and similar organizations reports from Dr. Weiss and other medical doctors purporting to interpret the Four Studies.

47. Spectrum DX Services, Inc.("Spectrum") is a corporation incorporated under the laws of Florida, with its principal place of business at 1071 Port Malabar Blvd., Palm Bay, Florida 32905.

Spectrum provides Dr. Weiss' reports to the Goldstein Group and similar organizations for patients in Illinois and many other States.

## IV. CLAIMS FOR RELIEF

### First Claim For Relief
### Declaratory Judgment
### 28 U.S.C. § 2201
### Against The Goldstein Group

48. State Farm realleges and incorporates by reference, as if set forth fully herein, the allegations in paragraphs 1-47 above.

49. Because there is an actual controversy between the parties, State Farm requests a judgment declaring that the Goldstein Group has no right to receive payment for any outstanding and future bills for the Professional Component of the Four Studies, and any other relief the Court deems just and proper.

### Second Claim For Relief
### Substantive Racketeering
### 18 U.S.C. §§ 1962(c) and 1964
### Against All Defendants

50. State Farm realleges and incorporates by reference, as if set forth fully herein, the allegations in paragraphs 1-49 above.

51. The defendants are an association-in fact "enterprise" ("the Mobile Diagnostics Enterprise"), as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce. The members of the Mobile Diagnostics Enterprise are and have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, with each member fulfilling a specific and necessary role to carry out and facilitate its purpose. Specifically, the Goldstein Group arranges for technicians to visit chiropractors' offices with the equipment necessary to perform the Four Studies; the Goroway Group

recruits chiropractors to participate in the scheme; Dr. Weiss provides reports with his purported findings from the Four Studies; and the Brown Group arranges for Dr. Weiss to do so. The planning and carrying out of their scheme would be beyond the capacity of each member of the Mobile Diagnostics Enterprise acting singly or without the aid of each other.

52. The Mobile Diagnostics Enterprise is distinct from and has an existence beyond the pattern of racketeering activity described, in part, below in paragraph 54, in that it employs or contracts with technicians and others who conduct the business of each of its member entities, owns or leases equipment necessary to perform the Four Studies, schedules and pays for technicians to travel to and perform the Four Studies in chiropractors' offices across the country, creates and uses seminars and other marketing techniques to recruit and encourage chiropractors into ordering the Four Studies for their patients, provides direction and documentation for the chiropractors to use in ordering and billing insurers for the Four Studies, maintains records regarding the Four Studies, prepares and provides bills, narrative reports and other documents to support the necessity of and charges for the Four Studies, and engages in collection activities.

53. Each defendant is or has been employed by and/or associated with the Mobile Diagnostics Enterprise.

54. Each defendant has knowingly conducted and/or participated, directly or indirectly, in the conduct of the Mobile Diagnostic Enterprises' affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted the fraudulent bills described, in part, in the chart attached hereto as Appendix A. Each such mailing was made in furtherance of the defendants' mail fraud scheme.

55. State Farm has been injured in its business and property by reason of the defendants' conduct in that it has paid more than $1,500,000 for the Four Studies

56. By reason of its injury, State Farm is entitled to treble damages, costs and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**Third Claim For Relief**
**Racketeering Conspiracy**
**18 U.S.C. §§ 1962(d) and 1964**
**Against All Defendants**

57. State Farm realleges and incorporates by reference, as if set forth fully herein, the allegations in paragraphs 1-56 above.

58. The defendants have wilfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate, directly or indirectly, in the conduct of the Mobile Diagnostic Enterprise's affairs, the activities of which were conducted through a pattern of racketeering activity which, is described, in part, in the chart attached hereto as Appendix A, in violation of 18 U.S.C. § 1962(d).

59. The object of the conspiracy was to defraud State Farm and other insurance companies of money.

60. State Farm has been injured in its business and property by reason of the defendants' conduct in that it has paid more than $1,500,000 for the Four Studies.

61. By reason of its injury, State Farm is entitled to treble damages, costs and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**Fourth Claim For Relief**
**Illinois Common Law Fraud**
**Against Goldstein, Brown, Goroway, Weiss,**
**Comprehensive, Premier, Providers and Spectrum**

62. State Farm realleges and incorporates by reference, as if set forth fully herein, the allegations in paragraphs 1-61 above.

63. Defendant intentionally and knowingly made or caused to be made the false and fraudulent statements of material fact to State Farm in connection with the claims described in the chart attached hereto as Appendix G, each of which involved an Illinois patient.

64. The material, false and fraudulent statements in each such claim are described in paragraph 28 above, and the chart attached hereto as Appendix G.

65. The defendants made or caused to be made these false and fraudulent statements to induce State Farm to pay the bills for the Technical and Professional Component of the Four Studies.

66. State Farm justifiably relied on the false and fraudulent representations, and as a direct and proximate result incurred damages in an amount to be determined at trial.

67. The defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, thus entitling State Farm to punitive damages.

WHEREFORE, State Farm seeks compensatory damages, treble damages, punitive damages, pre-judgment and post-judgment interest, costs, including attorney's fees, as described above, and all other relief that this Court deems just and proper.

Dated: Chicago, Illinois
June __, 2003

KATTEN MUCHIN ZAVIS ROSENMAN

Ross O. Silverman
Alexander S. Vesselinovitch
Attorneys for Plaintiff
525 West Monroe Street
Chicago, Illinois 60661-3693
(312) 902-5200

# SEE CASE FILE FOR EXHIBITS

#2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

DOCKETED
JUN 1 1 2003

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

---

**Plaintiff(s): State Farm Mutual Automobile Insurance Company**

**Defendant(s): Brad M. Goldstein, Robert J. Brown, David K. Goroway, Gary M. Weiss, Comprehensive Medical Group, Inc., Neurological Consultants, LLC, Neurology Medical Associates of New Jersey, LLC, d/b/a Neuro/Med Associates, LLC, Optimal Medical Group, LLC, Practice Mechanix, Inc., Premier Medical Group, Inc., Prism Medical Diagnostics, LLC, Providers Medical Group, LLC, and Spectrum DX Services, Inc.**

County of Residence: McClean County, Illinois

County of Residence: Palm Beach County, Florida

Plaintiff's Atty: Ross O. Silverman
Katten Muchin Zavis Rosenman
525 W. Monroe Street, Suite 1600
312-902-5442

Defendant's Atty:

03C 3936

II. Basis of Jurisdiction: 3. Federal Question and Diversity Jurisdiction

FILED-ED4
03 JUN 10 AM 9:57
CLERK U.S. DISTRICT COURT

III. Citizenship of Principal Parties
(Diversity Cases Only)

Plaintiff:- **4 IL corp or Principal place of Bus. in IL**
Defendant:- **2 Citizen of Another State**

IV. Origin : **1. Original Proceeding**

JUDGE SHADUR

V. Nature of Suit: **470 RICO**

VI. Cause of Action: **18 USC 1961 et seq., 28 USC 2201 and common law fraud: This action seeks to recover millions of dollars that Defendants have stolen from State Farm by submitting and causing to be submitted thousands of fraudluent charges for worthless and unnecessary electrodiagnostic and spinal ultrasound studies that were purportedly rendered to victims of automobile accidents on a nationwide scale. In addition, Plaintiff seeks a declaratory judgment that neither it nor its insureds has any obligation to pay certain such bills that have been submitted for payment but not yet paid.**

VII. Requested in Complaint

Class Action: **No**

Dollar Demand: **Compensatory damages, treble damages, punitive damages, pre-judgment interest, post-judgment interest, costs including attorneys' fees, and all other relief the Court deems just and proper**

Jury Demand: **Yes**

MAGISTRATE JUDGE MASON

VIII. This case IS NOT a refiling of a previously dismissed case.

---

**Signature:** [signature]

**Date:** 6/10/03

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. Note: You may need to adjust the font size in your browser display to make the form print properly. Revised: 06/28/00

1-2

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

In the Matter of

State Farm Mutual Automobile Insurance Company

v.

Brad M. Goldstein, et al.

JUDGE SHADUR

Case Number: 03C 3936

FILED-ED4
03 JUN 10 PM 4:49
CLERK
U.S. DISTRICT COURT

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

State Farm Mutual Automobile Insurance Company

MAGISTRATE JUDGE MASON

DOCKETED
JUN 1 1 2003

| (A) | | (B) | |
|---|---|---|---|
| SIGNATURE [signature] | | SIGNATURE [signature] | |
| NAME Ross O. Silverman | | NAME Alexander S. Vesselinovitch | |
| FIRM Katten Muchin Zavis Rosenman | | FIRM Katten Muchin Zavis Rosenman | |
| STREET ADDRESS 525 West Monroe Street, Suite 1600 | | STREET ADDRESS 525 West Monroe Street, Suite 1600 | |
| CITY/STATE/ZIP Chicago, IL 60661 | | CITY/STATE/ZIP Chicago, IL 60661 | |
| TELEPHONE NUMBER 312-902-5200 | FAX NUMBER 312-577-8989 | TELEPHONE NUMBER 312-902-5200 | FAX NUMBER 312-577-4755 |
| E-MAIL ADDRESS ross.silverman@kmzr.com | | E-MAIL ADDRESS avesselinovitch@kmzr.com | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6226560 | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 3122893 | |
| MEMBER OF TRIAL BAR? | YES ☑ NO ☐ | MEMBER OF TRIAL BAR? | YES ☑ NO ☐ |
| TRIAL ATTORNEY? | YES ☑ NO ☐ | TRIAL ATTORNEY? | YES ☑ NO ☐ |
| | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ NO ☑ |
| (C) | | (D) | |
| SIGNATURE [signature] | | SIGNATURE | |
| NAME Jason P. Shaffer | | NAME | |
| FIRM Katten Muchin Zavis Rosenman | | FIRM | |
| STREET ADDRESS 525 W. Monroe Street, Suite 1600 | | STREET ADDRESS | |
| CITY/STATE/ZIP Chicago, IL 60661 | | CITY/STATE/ZIP | |
| TELEPHONE NUMBER 312-902-5200 | FAX NUMBER 312-577-4642 | TELEPHONE NUMBER | FAX NUMBER |
| E-MAIL ADDRESS jason.shaffer@kmzr.com | | E-MAIL ADDRESS | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6273397 | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | |
| MEMBER OF TRIAL BAR? | YES ☐ NO ☑ | MEMBER OF TRIAL BAR? | YES ☐ NO ☐ |
| TRIAL ATTORNEY? | YES ☐ NO ☑ | TRIAL ATTORNEY? | YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ NO ☑ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ NO ☐ |

13